**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROD BLAGOJEVICH, | ) | |
| | ) | |
| Plaintiff, | ) | No. 21 cv 04103 |
| | ) | |
| v. | ) | |
| | ) | Hon. Steven C. Seeger |
| STATE OF ILLINOIS, ILLINOIS | ) | |
| GENERAL ASSEMBLY, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS**

Defendants, the State of Illinois and the Illinois House of Representatives and the Illinois State Senate (collectively, the "Illinois General Assembly"), by their attorney, Kwame Raoul, the Illinois Attorney General, submit the following memorandum in support of their motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**INTRODUCTION**

Former Illinois Governor Rod Blagojevich brings this lawsuit claiming that the Illinois General Assembly's bar against him ever holding state or local office in Illinois violates his federal rights. Plaintiff was indicted in 2009, while he was serving his second term as governor, following a scandal where Plaintiff was caught on a FBI wiretap attempting to trade the then vacated senate seat of President Barack Obama for a position in President Obama's cabinet.

After two jury trials, Plaintiff was convicted of 18 crimes, including attempted extortion from campaign contributors, corrupt solicitation of funds, wire fraud, and lying to federal investigators. *United States v. Blagojevich*, 794 F. 3d 729, 733 (7th Cir. 2015). Plaintiff sought review of his convictions, asking the Seventh Circuit Court of Appeals to hold that the evidence

against him was insufficient to convict him on any count. *Id.* The Seventh Circuit held that this argument was "frivolous." *Id.* "The evidence, much of it from Blagojevich's own mouth, is overwhelming," wrote the Seventh Circuit. *Id.* While the Seventh Circuit did vacate five convictions for wire fraud and attempted extortion due to faulty jury instructions, the Seventh Circuit upheld the remaining 13 convictions for wire fraud, attempted extortion, and lying to federal investigators. *Compare id*. at 743 (listing the vacated convictions) *with* Judgment in *United States v. Blagojevich*, No. 08 cr 888, Dkt. No. 904 (N.D. Ill.), attached hereto as Exhibit A.[1]

In 2009, while the criminal charges were pending, Plaintiff was impeached by a vote of 117-1 by the Illinois House of Representatives.[2] This vote was based on the unanimous recommendation of the House Special Investigative Committee following the committee's investigation, which included a series of hearings during which Plaintiff was represented by counsel and given the opportunity to be present at every hearing, submit evidence, and ask questions of witnesses.[3] Plaintiff was then convicted, removed from office, and disqualified from holding public office unanimously 59-0 by the Illinois Senate[4] after a trial at which Plaintiff

---

[1] The Court may take judicial notice of the contents of court records from other matters as well as other external sources cited in this brief, as they are public records "not subject to reasonable dispute." *Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012); *see also Tobey v. Chibucos*, 890 F. 3d 634, 648 (7th Cir. 2018); Fed. R. Evid. 201(b)(2) (permitting judicial notice of facts "whose accuracy cannot reasonably be questioned"); Fed. R. Evid. 902(6) (official documents and newspapers are self-authenticating); Fed. R. Evid. 101(b)(6) (rules on printed information apply to electronic sources of information).

[2] *House Roll Call House Resolution 5 Impeachment of Governor*, 96th General Assembly (Jan. 14, 2009) *available at* https://www.ilga.gov/legislation/votehistory/96/house/09600HR0005_01142009_003000.pdf (last visited Oct. 1, 2021).

[3] *Final Report of the Special Investigative Committee*, 95th General Assembly (Jan. 8, 2009) *available at* https://ilga.gov/house/committees/95Documents/Final%20Report%20of%20the%20Special%20Investigative%20Committee.pdf (last visited Sept. 29, 2021); *see also House Impeachment Record*, 95th General Assembly, *available at* https://ilga.gov/senate/HouseImpeachmentRecords.asp (last visited Sept. 29, 2021).

[4] *Roll Call Motion to Sustain and Remove Governor Rod R. Blagojevich*, Illinois Senate 96th General Assembly (Jan. 29, 2009) *available at* https://www.ilga.gov/senate/Impeachment/Votes/ Roll%20Call%20%207%20-%20Thursday,%20January%2029,%202009.pdf (last visited Sept. 24, 2021); *Roll Call Motion to Disqualify Rod R. Blagojevich From Future Office*, Illinois Senate 96th General

appeared, presented a closing argument, and was again given the opportunity to submit evidence, file motions, and question witnesses.[5]

Plaintiff's disqualification from holding any public office in Illinois was expressly authorized by the Illinois Constitution. ILL. CONST. Art. IV § 14. This provision of the Illinois Constitution mirrors a nearly identical provision of the United States Constitution. *Compare* ILL. CONST. Art. IV § 14 *with* U.S. CONST. Art. I § 3. And yet, Plaintiff claims that the disqualification on him holding public office in Illinois somehow violates Illinois' voters' rights under the First Amendment. Plaintiff also alleges that his due process and Sixth Amendment rights were violated during the course of the impeachment proceeding, a matter that is legislative in nature, not criminal or civil.

Plaintiff's claims are frivolous and should be dismissed for six reasons. *First*, Plaintiff may not sue the State of Illinois or the Illinois General Assembly under Section 1983[6] and those claims are barred by the Eleventh Amendment. *Second*, the validity of an impeachment is a nonjusticiable political question that is not subject to judicial review. *Third*, Plaintiff's claims, which arise out of an impeachment proceeding in 2009, are time-barred. *Fourth*, Plaintiff lacks standing to bring claims based on an alleged injury to Illinois voters. *Fifth*, Plaintiff lacks standing to sue on his own because he fails to allege an actual or impending injury. Moreover, even if Plaintiff could establish an injury based on his disqualification from office due to the impeachment, such an injury is not

---

Assembly (Jan. 29, 2009) *available at* https://www.ilga.gov/senate/Impeachment/Votes/ Roll%20Call%20%208%20-%20Thursday,%20January%2029,%202009.pdf (last visited Sept. 24, 2021).

[5] *Senate Impeachment Tribunal Documents*, 96th General Assembly, *available at* https://ilga.gov/senate/ImpeachDocuments.asp (last visited Sept. 29, 2021).

[6] The form complaint states that the claim is "for a violation of plaintiff's civil rights as protected by the Constitution and laws of the United States under 42 U.S.C. §§ 1983, 1985, and 1986." Plaintiff's Complaint does not bring any allegations under Sections 1985 or 1986 and, as such, this motion to dismiss focuses solely on the allegations that Plaintiff's rights were violated under Section 1983.

redressable by this Court. Even if Plaintiff prevailed on this claim, he would still remain disqualified from office under Illinois law due to his status as a felon convicted for abuses of his office. *Sixth*, Plaintiff's claim that his disqualification from office as a consequence of impeachment is unconstitutional lacks plausibility because this precise disqualification is contemplated in the federal Constitution as a consequence of impeachment, the impeachment proceedings were political rather than criminal, and Plaintiff lacks a protected interest in running for or holding public office. For these reasons, the Complaint should be dismissed.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(1) provides that a party may move to dismiss a case based on "lack of subject matter jurisdiction." F.R.C.P. 12(b)(1). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." *Id*. at 12(h)(3).

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint where the complaint fails to state a claim upon which relief can be granted. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). To survive a motion to dismiss under this standard, a complaint must contain a claim to relief that is plausible on its face, which in turn requires sufficient factual allegations to permit the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556, U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 557 (2007)) (internal quotation marks omitted). Purely legal conclusions are insufficient. *Id.* When reviewing the sufficiency of a complaint, the court must accept as true all well-pleaded factual allegations. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). But legal conclusions and "conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *Id.*

4

**ARGUMENT**

I. **Plaintiff may not sue the Defendants under Section 1983 and his claim is barred by the Eleventh Amendment.**

Plaintiff brings his claims for relief under Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983, and seeks declaratory and injunctive relief against the State of Illinois and the Illinois General Assembly. (*See* ECF No. 1 at 1). Section 1983 authorizes suits for damages only against a "person" who acts under color of state law and deprives another person of his or her rights. *See* 42 U.S.C. § 1983. But the State and its branches are not "persons" subject to suit under Section 1983. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 49 n.24 (1997); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that the state is not a "person" under Section 1983). This protection clearly applies to a branch of state government such as the General Assembly. *Brown v. Busch*, Case No. 4:13-CV-71 RM, 2013 U.S. Dist. LEXIS 168709\*, 2013 WL 619950, \*17 (N.D. Ind. 2013) (holding that state Eleventh Amendment immunity applies to state senate and legislature); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (Eleventh Amendment immunity applies to "arm[s] of the State"). Therefore, Plaintiff's claims must fail.

Moreover, the Eleventh Amendment prohibits any suit against a state or its branches without the state's consent. *See Will*, 491 U.S. at 67; *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Eleventh Amendment bars § 1983 claims); *Brown*, Case No. 4:13-CV-71 RM, 2013 U.S. Dist. LEXIS 168709\* at \*17. The Eleventh Amendment preserves the sovereignty of the States and protects the States from suit unless one of three limited exceptions applies: (1) where Congress validly abrogates a State's immunity from suit; (2) where the State consents to suit in federal court; and (3) when the suit is within the parameters enumerated by the Supreme Court in *Ex parte Young*,

209 U.S. 123 (1908). *Id.*; *Council 31 of the American Fed. of State, County, and Mun. Employees, AFL-CIO v. Quinn*, 680 F.3d 875, 882 (7th Cir. 2012).

Here, neither the State nor the General Assembly have consented to suit, so the question then becomes whether Congress has validly abrogated the State's immunity from suit in this context or whether this case falls within the *Ex parte Young* exception to Eleventh Amendment immunity. Neither exception applies and Plaintiff's claims must be dismissed.

As previously discussed, Plaintiff brings these claims under Section 1983. (ECF No. 1 at 1). "[Section 1983] creates a cause of action for the deprivation, under color of state law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Mardicci v. Moore*, 572 F.3d 313, 318-19 (7th Cir. 2009) (internal quotations omitted). However, Congress did not abrogate the State's immunity from suit when it enacted Section 1983 because, as discussed, the State is not a "person" suable under Section 1983. *See Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012).

Plaintiff's claims also do not fit into the narrow exception created by *Ex parte Young*. The *Ex parte Young* exception allows "private parties to sue individual state officials for prospective relief to enjoin ongoing violations of federal law." *See Council 31 of the American Fed. of State, County, and Mun. Employees, AFL-CIO*, 680 F.3d at 882. Plaintiff's allegations do not satisfy the conditions established in *Ex parte Young* because Plaintiff has not named a State official tasked with enforcement of the law as a defendant. *See id*. (*See* ECF No. 1 at 1). Thus, no exception to the Defendants' Eleventh Amendment immunity applies to this case and Plaintiff's Complaint must be dismissed with prejudice.

**II.   The impeachment process is a nonjusticiable political question.**

Even if Plaintiff's claims were not barred by the Eleventh Amendment, Plaintiff's impeachment is not suitable for review by this Court because impeachment is a nonjusticiable

political question. "The political question doctrine identifies a class of questions that either are not amenable to judicial resolution because the relevant considerations are beyond the court's capacity to gather and weigh or are committed by the Constitution to the exclusive discretion of the legislative or executive branches of government." *Shankman v. Clerk of Cook Cty.*, 994 F. 3d 832, 841 (7th Cir. 2021). Impeachment, a legislative check on the executive and judicial branches, is recognized as a matter exclusively within the jurisdiction of the legislature and thus not reviewable by the judiciary. Thus, it is well-established that impeachments of federal officers by Congress are political questions. "[I]mpeachment is viewed as a legislative activity in the sense that it is one of the 'other matters which the Constitutional places in the jurisdiction of either House.'" *Penny v. Pelosi*, No. 20 cv 2047, 2021 U.S. Dist. LEXIS 107605, *13 (C.D. Ill. May 10, 2021) (internal citations omitted) (finding that the Court lacked subject matter jurisdiction to hear claim against House of Representative Democrats who voted to impeach former President Trump).

The Supreme Court explained why federal courts cannot interfere in the impeachment process in *Nixon v. United States*, 506 U.S. 224 (1993). In *Nixon*, a former federal judge was impeached by the House of Representatives and when the Senate attempted to have him removed from office he sued, alleging that the Senate's failure to provide a full evidentiary hearing violated his constitutional rights. *Nixon*, 506 at 226-228. The Supreme Court affirmed the circuit court's holding that plaintiff's claims were nonjusticiable. *Id.* at 238.

The *Nixon* Court determined "that the word 'sole' is of considerable significance" and rejected plaintiff's arguments that the word "sole" was a "cosmetic edit" with "no substantive meaning." *Id.* at 231-32. The *Nixon* court also analyzed the debates between the framers of the Constitution and ultimately found that the framers intended to preclude judicial review of the impeachment process because "[j]udicial involvement in impeachment proceedings, even if only for purposes of judicial review, is counterintuitive because it would eviscerate 'the important

7

constitutional check' placed on the Judiciary by the Framers." *Id.* at 235 (internal quotations omitted). Further, the *Nixon* Court found that it was appropriate to invoke the political question doctrine because finality in impeachment proceedings was necessary to avoid "months, or perhaps years, of chaos." *Id.* at 236.

Here, Plaintiff's claims are analogous to those in *Nixon*. As in *Nixon*, Plaintiff alleges his rights were violated because he allegedly was not permitted to call witnesses or present exculpatory evidence to the Illinois Senate. (ECF No. 1 at 7). This Court should apply the same rationale as in *Nixon* and find that the political question doctrine applies and that it cannot hear Plaintiff's claims. While *Nixon* discussed impeachment in the federal, and not state, context, Article IV Section 14 of the Illinois Constitution mirrors the relevant provisions of the United States Constitution (Article I Section 2, clause 5 and Section 3, clause 6) in that it gives the Illinois House of Representatives the sole authority to initiate impeachment proceedings and the Illinois Senate the sole power to try all impeachments. *Compare* ILL. CONST. Art. IV § 14 *with* U.S. CONST. Art. I, § 2, cl. 5 & Art. I, §3, cl.6. The impeachment powers conferred by the Illinois Constitution are essentially identical to the federal impeachment powers and therefore should be treated identically. Consequently, this Court cannot consider Plaintiff's claims relating to his impeachment, and those claims should be dismissed.

### III. Plaintiff's claim is barred by the statute of limitations.

Even if Plaintiff's claims are not barred by the Eleventh Amendment and his claims were justiciable, his claims are nonetheless time-barred. A complaint may properly be dismissed based on the statute of limitations through a motion to dismiss where the facts sufficient to establish a complaint's tardiness are apparent from the face of the complaint. *Cancer Foundation Inc., v. Cerberus Capital Mgmt., LP*, 559 F. 3d 671, 674-75 (7th Cir. 2009). For claims arising under Section 1983, federal courts adopt the statute of limitations of the law of the forum state. *Bowers*

*v. Dart*, 1 F. 4th 513, 518 (7th Cir. 2021). In Illinois, the limitations period for Section 1983 cases is two years. *Johnson v. Rivera*, 272 F. 3d 519, 521 (7th Cir. 2001).

Plaintiff's claims arise from the General Assembly's impeachment of him, removing him from office, and barring him from holding public office in Illinois. (ECF No. 1 at 9-10). As Plaintiff alleges, the Illinois State Senate voted to remove Plaintiff from office and ban him from holding public office on January 29, 2009. (ECF No. 1 at 7). Accordingly, Plaintiff's claim accrued on that date and became time-barred on January 29, 2011. Plaintiff's claims are more than a decade late and are consequently barred by the statute of limitations.

## IV. Plaintiff lacks standing.

"Article III restricts the judicial power to actual 'Cases' and 'Controversies,' a limitation understood to confine the federal judiciary to the traditional role of Anglo-American courts, which is to redress or prevent actual or imminently threatened injury." *Ezell v. City of Chicago*, 641 F.3d 684, 694-95 (7th Cir. 2011). Accordingly, standing exists (1) "when the plaintiff suffers an actual or impending injury;" (2) "the injury is caused by the defendant's acts;" and (3) "a judicial decision in the plaintiff's favor would redress the injury." *Id.* (internal quotations omitted). The Plaintiff has the burden of establishing all three elements at the pleading stage. *See Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1547 (2016). Here, Plaintiff has not alleged facts necessary to satisfy the standing requirements and his claims should be dismissed for this reason as well.

### A. Plaintiff lacks standing to bring claims on behalf of Illinois voters.

Plaintiff alleges that if he is not allowed to run for public office in the future, the public will be denied the right to vote for or against him. (ECF No. 1 at 9). However, Plaintiff cannot bring claims on behalf of the general public. A plaintiff must show that he has suffered an actual or impending injury to establish standing. *Ezell*, 941 F.3d at 694. This requirement serves to "put the decision as to whether review will be sought in the hands of those who have a direct stake in

the outcome." *Sierra Club v. Morton*, 405 U.S. 727, 740 (1972). "Thus, [the Supreme] Court has held that 'the plaintiff generally must assert his own legal rights and interest, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 474, (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). Therefore, Plaintiff does not have standing to bring any claims on behalf of the general voters of Illinois.

### B. Plaintiff lacks standing to sue on his own behalf.

Plaintiff has also failed to satisfy Article III's standing requirements as it relates to himself. Plaintiff has not shown an actual or impending injury that was caused by the State's acts or that this Court could provide redress for any alleged injury.

#### 1. Plaintiff has failed to allege an actual or impending injury.

Plaintiff has failed to allege the first requirement to establish Article III standing—an actual or impending injury. *Id.* To satisfy this requirement, "[t]he complainant must allege an injury to himself that is 'distinct and palpable' as opposed to merely 'abstract,' and the alleged harm must be actual or imminent, not 'conjectural' or 'hypothetical.'" *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (internal quotations omitted). Plaintiff has failed to allege any specific injury that he has or will suffer. (*See* ECF No. 1). Plaintiff alleges that he cannot run for office, but he has not alleged that he actually plans to run for office, let alone that he has attempted to run for office and been denied. As such, Plaintiff's alleged injury is purely hypothetical and cannot be used to establish Article III standing.

#### 2. Plaintiff's alleged injury cannot be redressed by this Court.

The final element of Article III is that Plaintiff's alleged injury must be redressable by this Court. *See Ezell*, 641 F.3d 695. However, Plaintiff cannot obtain any of the relief he seeks through a federal court order. Redressability examines the causal connection between the alleged injury

10

and the judicial relief requested. *Cabral v. City of Evansville*, 759 F. 3d 639, 642 (7th Cir. 2014). The focus is on the requested relief. *Id.* "The relevant inquiry is whether…the plaintiff has shown the injury to himself is likely to be redressed by a favorable decision." *Id.* Thus, if Plaintiff's injury cannot be redressed by a favorable decision, then Plaintiff lacks standing.

Plaintiff's alleged injury in this case is that he is barred from holding public office in Illinois as a result of his impeachment. But Plaintiff is *also* barred from holding office by statute because of his felony convictions. The Illinois Constitution of 1970 prohibits persons convicted of a felony, bribery, or infamous crime from holding an office created by the Constitution, unless eligibility can be restored as provided by statute. Ill. Const. Art. XIII, § 1. The Illinois Election Code expands this prohibition to additional offices and establishes a method for restoration providing that "[a]ny person convicted of an infamous crime . . . shall thereafter be prohibited from holding any office of honor, trust, or profit, unless such person is again restored to such rights by the terms of a pardon for the offense, has received a restoration of rights by the Governor, or otherwise according to law." 10 ILCS 5/29-15. This provision of the Election Code has already been held to be constitutional. *See Parker v. Lyons*, 757 F.3d 701, 707 (7th Cir. 2014).

The Illinois Election Code defined "infamous crime" through Section 124-1 of the Code of Criminal Procedure of 1963, which has since been repealed. However, the Illinois courts have found that a crime is infamous when "it is inconsistent with commonly accepted principles of honesty and decency, or involves moral turpitude." *People ex rel. Kankakee v. Morris*, 467 N.E.2d 589, 592 (Ill. App. 3d Dist.) (1984) (affirming removal of alderman from office based on felony theft); *see also People ex rel. Ward v. Tomek*, 203 N.E.2d 744, 746 (Ill. App. 1st Dist.) (1964) (holding that conspiracy is an infamous crime). As such, Plaintiff's litany of felony convictions relating to his abuse of his office, actions that are inconsistent with accepted principles of honesty and decency and that clearly involve moral turpitude, necessarily must fall under the Election

Code's ban on allowing individuals convicted of infamous crimes from running for office. Consequently, even if Plaintiff *could* show that his constitutional rights were violated by his bar on holding public office following his impeachment (and as explained below, he cannot), Plaintiff would still nonetheless be barred from holding office under Article III, Section 1 of the Illinois Constitution and Section 29-15 of the Election Code. Thus, his claim is not redressable by this Court, and he therefore lacks standing to bring his claims.

## V. Plaintiff fails to state a plausible claim that his disqualification from office is unconstitutional.

Even if Plaintiff has standing to claim that his disqualification from office violates the First Amendment rights of Illinois voters, Plaintiff has not stated a plausible cause of action on this basis. The Illinois Constitution provides that disqualification from office may be a punishment for an impeached officer. ILL. CONST. Art. IV § 14. ("Judgment shall not extend beyond removal from office and disqualification to hold any public office of this State."). This provision tracks nearly identical language from the United States Constitution regarding impeachment of federal officers. U.S. Const. Art. I § 3. ("Judgment in cases of impeachment shall not extend further than to removal from office, and disqualification to hold and enjoy any office of honor, trust or profit under the United States.").

It is well-established that disqualification from office is among the possible consequences of impeachment. *United States v. Brown*, 381 U.S. 437, 491 (1965) ("Disqualification from office may be punishment, as in cases of conviction upon impeachment.") (quoting *Cummings v. Missouri*, 71 U.S. 277, 230 (1867). Defendants are unaware of any case in the United States where this principle has ever been questioned, much less overturned. Plaintiff's First Amendment claim is not plausible and should be dismissed.

Plaintiff's Sixth Amendment claim is even less plausible. By its own terms, the Sixth Amendment applies only to "criminal prosecutions." U.S. CONST., AMEND. VI. But, as discussed above, an impeachment is a political proceeding, not a criminal one. A "criminal prosecution" begins, and the Sixth Amendment attaches, at the "initiation of adversary *judicial criminal proceedings* . . . because the initiation of such proceedings marks the commencement of the criminal prosecutions to which alone the explicit guarantees of the Sixth Amendment are applicable." *Moore v. Illinois*, 434 U.S. 220, 226-27 (1977) (emphasis added) (internal quotations omitted). To constitute a *criminal* proceeding, there must be a threat of "actual imprisonment" as a direct result of the proceeding. *Scott v. Illinois*, 440 U.S. 367, 373 (1979). Here, the direct result of the impeachment proceeding was that Plaintiff was removed from office and barred from holding office in Illinois—his imprisonment was a result of criminal proceedings held in Northern District of Illinois, not the General Assembly. Even Plaintiff admits that his claims are not related to criminal proceedings. (ECF No. 1 at 3). Thus, Plaintiff cannot maintain a Sixth Amendment claim against the State (or any other entity) with respect to his impeachment.

Plaintiff cannot state a viable Fourteenth Amendment claim that his due process rights were violated. As discussed, Plaintiff's claims relate to his impeachment and, therefore, are a political question that cannot be reviewed by this Court. *See Nixon*, 506 U.S. at 238. Moreover, beyond the political nature of the impeachment proceedings, Plaintiff cannot state a claim that his disqualification from holding future public office by the Senate violated his due process rights under the Fourteenth Amendment because Plaintiff lacks a property or liberty interest in running for or holding future public office. The due process clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. "To demonstrate a procedural due process violation of a property right, the plaintiff must establish that there is (1) a cognizable property interest; (2) a deprivation of that

property interest; and (3) a denial of due process. Accordingly, a plaintiff asserting a procedural due process claim must have a protected property interest in that which [he] claims to have been denied without due process." *Price v. Board of Educ. of City of Chicago*, 755 F.3d 605, (7th Cir. 2014) (quoting *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010)).

Long ago, the Supreme Court made clear that an individual has no property or liberty interest in holding an elected office. *Snowden v. Hughes*, 321 U.S. 1, 6-7 (1944) (citing *Taylor v. Beckham*, 178 U.S. 548 (1900)) ("an unlawful denial by state action of the right to state political office is not a denial of a right of property or of liberty secured by the due process clause."). Despite expansion of due process rights over the years, lower courts have continued to conclude that individuals lack an interest in nomination to, election to, or holding of public office that is protected by the Fourteenth Amendment. *See Wilson v. Birnberg*, 667 F.3d 591, 598 (5th Cir. 2012) ("[T]here is no constitutional right to run for state office protected by the Fourteenth Amendment." (citation and internal quotation marks omitted)); *Velez v. Levy*, 401 F.3d 75, 86–87 (2d Cir. 2005) ("[Plaintiff] lacks a constitutionally cognizable property interest in her employment as an elected official."); *Burks v. Perk*, 470 F.2d 163, 165 (6th Cir. 1972) ("Public office is not property within the meaning of the Fourteenth Amendment."). As in the cases cited, Plaintiff has no entitlement to state or local public office. Accordingly, Plaintiff's claim for a violation of his Fourteenth Amendment due process rights must be dismissed for lack of a protected interest.

Finally, even if Plaintiff had a protected interest in holding public office (which he does not), any due process claim would also fail on the merits. In most cases, due process requires only that the individual receive prior notice and a meaningful opportunity to be heard. *Manley v. Law*, 889 F.3d 885, 890 (7th Cir. 2018). Here, there is no question that the impeachment proceedings met those requirements. As discussed above, the House's vote to impeach Plaintiff was based on the recommendation of the House Special Investigative Committee following a series of hearings

14

during which Plaintiff was represented by counsel and given the opportunity to be present at every hearing, submit evidence, and ask questions of witnesses. *See* n.3 above. At the impeachment trial in the Senate, Plaintiff appeared, presented a closing argument, and was again given the opportunity to submit evidence, file motions, and question witnesses. *See* n.5 above. Even if Plaintiff could maintain a due process claim, these procedures were more than sufficient for due process.

## CONCLUSION

Plaintiff's frivolous claims relating to his impeachment and bar from holding public office are barred by the Eleventh Amendment, the justiciability doctrine, the statute of limitations, and standing doctrine. And even if Plaintiff could get past all of these insurmountable barriers, Plaintiff cannot state any constitutional claim. The Illinois Constitution's provision permitting impeached officials to be barred from public office is clearly constitutional as it mirrors an identical provision from the United States Constitution, Plaintiff cannot maintain a Sixth Amendment claim relating to a political proceeding, and Plaintiff has no interest in holding public office that is protected by the Fourteenth Amendment.

WHEREFORE, Defendants State of Illinois and the Illinois General Assembly respectfully requests that this honorable court dismiss Plaintiff's Complaint with prejudice.

Dated: October 1, 2021

                                        Respectfully submitted,

KWAME RAOUL                              /s/ Hal Dworkin
*Attorney General*                         HAL B. DWORKIN
*State of Illinois*                           MARY JOHNSTON
                                        Assistant Attorneys General
                                        Office of the Illinois Attorney General
                                        100 W. Randolph Street, 13th Floor
                                        Chicago, Illinois 60601
                                        (312) 814-5159
                                        Hal.Dworkin@ilag.gov
                                        Mary.Johnston@ilag.gov

                                        *Counsel for Defendants*