

FILED

2/16/2022

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

EY

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| Rod R. Blagojevich | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No.1:21-cv-4103 |
| State of Illinois General Assembly | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

For the foregoing reasons and all the others discussed in Plaintiff's Complaint, the present Motion to Dismiss should be denied.

The legendary Supreme Court Justice Hugo Black once described a king who wrote the laws of his kingdom in a hand so fine that his subjects could not read them. This gave the king the power to change the laws at will and to force his own whim. The rule of law is supposed to apply to all people regardless of status or station. The governing rules are announced in advance, so that everyone can know which actions will be punished and which rewarded. Moreover, the rules are published beforehand so people are given a fair chance to know what is and what isn't permissible under the law. Justice Black's illustration reminds us of what happens when a justice system relies too much on the rule of man rather than the rule of law.

Plaintiff has a cause of action and can present evidence, including dozens of hours of FBI tape recordings that have thus far been suppressed, that would prove that he was impeached, removed, and disqualified from being able to run for any state or local office for non-impeachable acts, and that he was tried twice, convicted in a second trial, and incarcerated for nonexistent crimes.

1

Plaintiff contends that if those suppressed FBI tapes had been allowed to be played in public and in court, he would not have been impeached, removed, or disqualified from holding the aforementioned public offices.

Plaintiff further contends that if those FBI tapes had been allowed to be played at trial, every one of the criminal convictions subsequently obtained against him would have instead led to his acquittal on all charges.

 Plaintiff contends that if all the relevant evidence were allowed to be heard in court, that evidence would show that he followed the law and that unlawful standards were used to convict him.

Plaintiff insists that he was targeted for political destruction by an unscrupulous United States Attorney who weaponized his office and criminalized what were legal and routine political conversations in order to unconstitutionally overthrow a duly elected, and twice elected Governor, and that many of the initial conversations that were wrongly criminalized, were actually initiated by then President-elect Obama.

Plaintiff contends that on or about the date and time of his arrest and in the days immediately thereafter, FBI agents working at the direction of the United States Attorney colluded with Democratic House Speaker Michael Madigan to prevent Plaintiff from calling relevant witnesses in his defense at the House impeachment hearings and from having the relevant FBI tapes heard at those House hearings.

Plaintiff contends that those same relevant witnesses and relevant FBI tapes were also not allowed to be played during the subsequent impeachment trial held in Illinois State Senate.

Plaintiff insists that he acted in good faith and followed the law as the United States Supreme Court defined it, as he understood it, and always with the advice of his attorneys.

Plaintiff contends that there are hundreds of hours of FBI tapes that have been under a court ordered seal that was put in place shortly after his arrest on 9 December 2008, and that those FBI tapes to this very day, have not been allowed to be heard by the public or in court. Furthermore, Plaintiff contends that those taped conversations provide the full context of conversations, tell the whole truth, and prove every one of his claims.

Plaintiff contends that the suppressed and covered-up FBI tapes show that he consistently and repeatedly sought the advice of his legal counsel and spoke to him on an average of three times a day,

2

with the intention of making sure that whatever ideas were discussed, or whatever decisions were ultimately made, were always within in the law, and that he was extra careful, particularly in the vague and grey areas of the law, to be sure that he didn't unintentionally or inadvertently stumble and do something or say something that would end up being on the wrong side of the law.

Additionally, the Plaintiff contends that had he been allowed to have the relevant FBI tapes played immediately after his arrest, he would have been able to provide the proper context to the misleading snippets of conversations played by the United States Attorney.

Those selected snippets of conversations played without being accompanied by the full conversation were designed to prejudice the public and members of the Illinois General Assembly who would sit in judgement of the Plaintiff against the Plaintiff. It foreseeably and inevitably led to a political chain of events that without the relevant and material evidence the FBI taped recordings would provide, made it impossible for the Plaintiff to survive politically.

The unprecedented arrest of a sitting Governor at 6 o'clock in the morning with FBI SWAT teams surrounding his house, followed by a super sensational press conference held by the United States Attorney where he announced the big lie of an attempt to sell a United States Senate seat, a charge that would eventually be overturned by the Appellate Court on July 22, 2015, calling those allegations nothing more than "routine political log rolling", and where the same United States Attorney falsely claimed that he was, "stopping a crime spree before it happened," set in motion the events that would soon lead to the eventual overthrow of a duly elected Governor.

Plaintiff further contends that had the United States Supreme Court granted Certiorari and heard his case, the Court would, in all likelihood, have unanimously reversed all of the convictions against him in the same way the United States Supreme Court did in the Arthur Anderson case where the Court unanimously ruled those convictions were obtained by the use of a standard that was not the law.

Plaintiff asserts that had he been afforded his 14th Amendment Constitutional right to Equal Protection under the law, and had the same legal standard applied in the cases of former Virginia Gov. Robert McDonnell and current United States Sen. Robert Menendez been applied in his case, every one of the charges against him would have been dismissed for insufficient evidence because of the absence of any evidence of an expressed quid pro quo, the standard established by the United States Supreme Court in the case of McCormick vs. the United States.

Furthermore, Plaintiff asserts that he has a cause of action because had the numerous misstatements of fact and false statements made by the United States Attorneys publicly, at trial, and in their appellate briefs been carefully considered, the Appellate Court would have almost certainly reversed all the convictions and remanded the case back to the trial court.

3

For these reasons and all the others discussed in the Plaintiff's Complaint, Plaintiff respectfully asks the court to deny the Defense Motion to Dismiss and set the matter forward for discovery.

Respectfully submitted,

Rod Blagojevich Pro Se

Rod Blagojevich
2934 W. Sunnyside
Chicago, Il 60625
773-415-2367
blagojevichr@gmail.com

--

4